# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DR. CHARLES SHULRUFF, D.D.S., on behalf of himself and the class members defined herein, | ) ) ) ) |
| Plaintiff, | ) ) 20-cv-6384 |
| v. | ) ) ) |
| IQVIA INC., and JOHN DOES 1-10, | ) ) ) ) |
| Defendants. | ) |

## COMPLAINT – CLASS ACTION

### INTRODUCTION

1. Plaintiff Dr. Charles Shulruff, D.D.S., brings this action to secure redress for the actions of Defendants IQVIA Inc. ("IQVIA") and John Does 1-10, in sending or causing the sending of unsolicited advertisements to telephone facsimile machines in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

2. The TCPA expressly prohibits unsolicited fax advertising. Unsolicited fax advertising damages the recipients. The recipient is deprived of the use of its fax machine. The recipient also wastes valuable time it would have spent on something else. Unsolicited faxes prevent fax machines from receiving and sending authorized faxes, cause wear and tear on fax machines, cost the recipient ink or toner used to print the junk faxes and require labor to attempt to identify the source and purpose of the unsolicited faxes.

1

## PARTIES

3. Plaintiff Charles M. Shulruff, D.D.S. is an individual located in Chicago, Illinois where he maintains standalone telephone facsimile equipment that automatically prints faxes onto paper using toner / ink.

4. Defendant IQVIA is a Delaware corporation. Its registered agent and office is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801. IQVIA was formed through the merger of IMS Health Inc. and Quintiles IMS Health Inc.

5. Defendant is engaged in data mining for the healthcare industry. Among other things, it obtains information about drug prescriptions from physicians and pharmacies in exchange for compensation. It aggregates, organizes and sells the data to support the marketing efforts of drug makers and others.

6. While most of Defendant's sales are made to companies in life sciences, including pharmaceutical companies, biotechnology companies, device and diagnostic companies, and consumer health companies, Defendant also sells to payers, government and regulatory agencies, healthcare providers, pharmaceutical distributors, and pharmacies.

7. Defendants John Does 1-10 are other natural or artificial persons that were involved in the sending of the facsimile advertisements described below. Plaintiff does not know who they are.

## JURISDICTION AND VENUE

8. This Court has jurisdiction under 28 U.S.C. §1331. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740, 751-53 (2012); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d

446 (7th Cir. 2005).

9. Personal jurisdiction exists in that Defendants:

   a. Have committed tortious acts in Illinois by causing the transmission of unlawful communications into the state.

   b. Have transacted business in Illinois.

10. Venue in this District is proper for the same reason.

## FACTS

11. On June 13, 2017, Plaintiff Dr. Charles Shulruff, D.D.S. received the unsolicited fax advertisement attached as <u>Exhibit A</u> on his standalone facsimile machine.

12. On August 3, 2017, Plaintiff Dr. Charles Shulruff, D.D.S. received the unsolicited fax advertisement attached as <u>Exhibit B</u> on his standalone facsimile machine.

13. On August 8, 2017, Plaintiff Dr. Charles Shulruff, D.D.S. received the unsolicited fax advertisement attached as <u>Exhibit C</u> on his standalone facsimile machine.

14. Discovery may reveal the transmission of additional faxes as well.

15. Defendant IQVIA is responsible for sending or causing the sending of the faxes.

16. Defendant IQVIA, as the entity whose products or services were advertised in the faxes, derived economic benefit from the sending of the faxes.

17. ImpactNetwork is owned and operated by IQVIA, Inc.

18. According to its website, www.myimpactnetwork.com, which is redirected to www.secure.myimpactnetwork.com/IRXPhysPortal "Impact Network is the leading market research community for physicians and healthcare providers in the US." (Last visited October 21, 2020).

19. IQVIA's 2017 Prospectus, available at

https://sec.report/Document/0001193125-19-064340/ provides in pertinent part:

> We have one of the largest and most comprehensive collections of healthcare information in the world, which includes more than 600 million comprehensive, longitudinal, non-identified patient records spanning sales, prescription and promotional data, medical claims, electronic medical records, genomics and social media. Our scaled and growing data set contains over 30 petabytes of proprietary data sourced form more than 140,000 data suppliers and covering approximately one million data feeds globally. Based on this data, we deliver information and insights on over 85% of the world's pharmaceuticals, as measured by 2017 sales. We standardize, curate, structure and integrate this data by applying our sophisticated analytics and leveraging our global technology infrastructure. This helps our clients run their organizations more efficiently and make better decisions to improve their clinical, commercial and financial performance. The breadth of the intelligent, actionable information we provide is not comprehensively available from any other source and our scope of information would be difficult and costly for another party to replicate.

20. The faxes attached hereto as Exhibits A-C seek membership in Defendant's ImpactNetwork research program.

21. The ImpactNetwork research program was launched in 2000 as a program for physicians across the United States, but has grown to also include dentists, nurses, physician assistants, hygenists and pharmacists.

22. Exhibits A - C invite Plaintiff Shulruff and other recipients to participate in Defendant's ImpactNetwork research program by providing responses to Defendant's surveys, including, the National Healthcare Census, or other online surveys about the participant's "over the counter product recommendations." www.myimpactnetwork.com/nhc redirects to secure.myimpactnetwork.com/nhc/ (Last visited January 3, 2020)

23. On information and belief, participants in the ImpactNetwork research program described in Exhibits A-C collect information that is provided to Defendant based on the participant's patient treatment decisions, interactions with pharmaceutical representatives and/or

4

response to surveys.

24. IQVIA collects data from paid participants in the ImpactNetwork research program such as physicians, dentists, pharmacists.

25. The survey participant responses are "used to supply industry leading pharmaceutical insights to influence the future of the healthcare industry." (Exhibit C)

26. The recipients of Exhibits A-C who participate in the ImpactNetwork research program provide survey responses that are compiled into the National Healthcare Census.

27. The National Healthcare Census is a "nationally syndicated survey [that] asks about your over the counter product recommendations. Your insights will help the healthcare industry better serve you and your practice." (Exhibit D)

28. Medical professionals who participate in ImpactNetwork research program earn compensation in the form of check or an Amazon gift card. www.myimpactnetwork.com.

29. On information and belief, participants in the ImpactNetwork research program, may also earn other rewards including an iphone, or other products and services offered by Defendant.

30. Defendant IQVIA sells the information collected from the ImpactNetwork surveys, including the National Healthcare Census, for profit as part of its business activities.

31. On information and belief, the survey results from Defendant's surveys, including, the National Healthcare Census, as well as the data collected from physicians and other participants of the ImpactNetwork research program are commercially available to members of the healthcare industry and pharmaceutical companies.

32. Defendant's privacy policy provides in part, "At ImpactNetwork (owned and operated by IQVIA), our business is to better serve you by providing you with the interesting, customized experiences you expect and by soliciting your information, views, and opinions on our mobile app and on our ImpactNetwork web site at www.myimpactnetwork.com." (Exhibit E)

33. Defendant's products and services are available on its website, www.myimpactnetwork.com. (redirected to www.secure.myimpactnetwork.com/IRXPhysPortal) (Last visited October 21, 2020).

34. To maintain a suitable sampling of medical professionals for the ImpactNetwork research program, IQVIA solicits healthcare professionals via facsimile.

35. Exhibits A - C do not identify any qualifications or pre-screening process in order to have a medical professional participate in Defendant's survey. Exhibits C-D provide that Plaintiff Shulruff's participation is "guaranteed".

36. Exhibits A - C direct the recipient to a website which includes a link for the potential participant to the wesbsite's privacy policy. The Defendant's privacy policy, Exhibit E, states that Defendant may share information with selected third parties for marketing or promotional purposes, as well as survey responses to Defendant's clients. "Solely with respect to hygienists and pharmacists, we may occasionally share demographic or contact information with selected third parties for marketing or promotional purposes." and "Except as otherwise explicitly noted, the actual responses you provide in connection with surveys or other programs are de-identified prior to provision to our clients." (Exhibit E)

37. Exhibits A-C offer monetary compensation to Plaintiff in exchange for the opportunity to provide the service of responding to survey questions.

38. <u>Exhibits A-C</u> seek a service from the recipient, a response to a survey. "Any fax announcing the availability of an opportunity for the recipient to exchange goods or services for compensation is 'material advertising the commercial availability or quality or any property, goods, or services,' within the TCPA." *Fischbein v. Olson Research Group, Inc*., 959 F.3d 559, 562 (4th Cir. 2020).

39. Discovery may reveal the transmission of additional faxes as well.

40. Defendants financially benefit from the survey participant's responses which is why Defendants offer compensation for the value of their service.

41. Defendant IQVIA either negligently or wilfully violated the rights of Plaintiff and other recipients in sending the faxes.

42. Each fax refers to one or more of the following: an email address, website, facebook page, phone and fax numbers used by Defendant IQVIA.

43. Plaintiff had no prior relationship with Defendants and had not authorized the sending of fax advertisements to Plaintiff.

44. The faxes did not contain an "opt out" notice in the form required by 47 U.S.C. §227.

45. The TCPA provides for affirmative defenses of consent or an established business relationship. Both defenses are conditioned on the provision of an opt out notice that complies with the TCPA. *Holtzman v. Turza*, 728 F.3d 682 (7th Cir. 2013); *Nack v. Walburg*, 715 F.3d 680 (8th Cir. 2013).

46. On information and belief, the faxes attached hereto were sent as part of a mass broadcasting of faxes.

47. On information and belief, Defendants have transmitted similar unsolicited fax advertisements to at least 40 other persons in Illinois.

48. There is no reasonable means for Plaintiff or other recipients of Defendants' unsolicited advertising faxes to avoid receiving illegal faxes. Fax machines must be left on and ready to receive the urgent communications authorized by their owners.

### COUNT I – TCPA

49. Plaintiff incorporates ¶¶ 1-48.

50. The TCPA makes unlawful the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine ..." 47 U.S.C. §227(b)(1)(C).

51. The TCPA, 47 U.S.C. §227(b)(3), provides:

**Private right of action.**

**A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State–**

**(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,**

**(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or**

**(C) both such actions.**

**If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.**

52. Plaintiff and each class member suffered damages as a result of receipt of the

unsolicited faxes, including the cost of ink or toner to print the junk faxes and wear and tear on the recipient's fax machine. Defendants have shifted their costs of advertising on Plaintiff and each class member. Furthermore, Plaintiff's statutory right of privacy was invaded.

53. Plaintiff and each class member is entitled to statutory damages.

54. Defendants violated the TCPA even if their actions were only negligent.

55. Defendants should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

56. Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), Plaintiff brings this claim on behalf of the following class and subclass:[1]

    A. *Facsimile Equipment Class:* Plaintiff brings this claim on behalf of a class, consisting of: (a) all persons with fax numbers (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. §1658), (c) were sent faxes by or on behalf of Defendant IQVIA, promoting its goods or services for sale (d) who were sent faxes on facsimile equipment of any type, (e) and which did not contain an opt out notice as described in 47 U.S.C. §227.

    B. *Standalone Facsimile Equipment SubClass:* Plaintiff brings this claim on behalf of a class, consisting of: (a) all persons with fax numbers (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. §1658), (c) were sent faxes by or on behalf of Defendant IQVIA, promoting its goods or services for sale (d) who were sent faxes on a standalone fax machine, (e) and which did not contain an opt out notice as described in 47 U.S.C. §227.

---

[1] The class definitions may need to be amended depending on further legal developments and discovery.

57. The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the class.

58. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

    a. Whether Defendants engaged in a pattern of sending unsolicited fax advertisements;

    b. The manner in which Defendants compiled or obtained their list of fax numbers;

    c. Whether Defendants thereby violated the TCPA;

59. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor Plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

60. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

61. A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against Defendants is small because it is not economically feasible to bring individual actions.

62. Several courts have certified class actions under the TCPA. *Sadowski v. Med1 Online, LLC,* 07 C 2973, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008); *CE Design*

*Ltd. v Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D.Ill. 2009); *Targin Sign Sys. v Preferred Chiropractic Ctr., Ltd.*, 679 F. Supp. 2d 894 (N.D.Ill. 2010); *Garrett v. Ragle Dental Lab, Inc.*, 10 C 1315, 2010 U.S. Dist. LEXIS 108339, 2010 WL 4074379 (N.D.Ill., Oct. 12, 2010); *Hinman v. M & M Rental Ctr.*, 545 F.Supp. 2d 802 (N.D.Ill. 2008); *Clearbrook v. Rooflifters, LLC*, 08 C 3276, 2010 U.S. Dist. LEXIS 72902 (N.D. Ill. July 20, 2010) (Cox, M.J.); *G.M. Sign, Inc. v. Group C Communs., Inc.*, 08 C 4521, 2010 U.S. Dist. LEXIS 17843 (N.D. Ill. Feb. 25, 2010); *Holtzman v. Turza*, 08 C 2014, 2009 U.S. Dist. LEXIS 95620 (N.D.Ill., Oct. 14, 2009); *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642 (W.D.Wash. 2007); *Display South, Inc. v. Express Computer Supply, Inc.*, 961 So.2d 451, 455 (La. App. 1st Cir. 2007); *Display South, Inc. v. Graphics House Sports Promotions, Inc.*, 992 So. 2d 510 (La. App. 1st Cir. 2008); *Lampkin v. GGH, Inc.*, 146 P.3d 847 (Ok. App. 2006); *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.*, 203 Ariz. (App.) 94, 50 P.3d 844 (2002); *Core Funding Group, LLC v. Young*, 792 N.E.2d 547 (Ind.App. 2003); *Critchfield Physical Therapy v. Taranto Group, Inc.*, 293 Kan. 285; 263 P.3d 767 (2011); *Karen S. Little, L.L.C. v. Drury Inns. Inc.*, 306 S.W.3d 577 (Mo. App. 2010); *Travel 100 Group, Inc. v. Empire Cooler Service, Inc.*, 03 CH 14510 (Cook Co. Cir. Ct., Oct. 19, 2004); *Rawson v. C.P. Partners LLC*, 03 CH 14510 (Cook Co. Cir. Ct., Sept. 30, 2005); *Nicholson v. Hooters of Augusta, Inc.*, 245 Ga.App. 363, 537 S.E.2d 468 (2000).

63. Management of this class action is likely to present significantly fewer difficulties than those presented in many class actions, e.g. for securities fraud.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the class and against Defendants for:

    a. Actual damages;

      b.      Statutory damages;

      c.      An injunction against the further transmission of unsolicited fax advertising;

      d.      Costs of suit;

      e.      Such other or further relief as the Court deems just and proper.

                                            s/ Daniel A. Edelman
                                            Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
Heather Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

Curtis C. Warner
5 E. Market St., Suite 250
Corning, NY 14830
(888) 551-8685

## **NOTICE OF LIEN AND ASSIGNMENT**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

       s/ Daniel A. Edelman
       Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)